DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| M & N AVIATION, INC. and GLOBAL AEROSPACE, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 2010-083 ) ) |
| UNITED PARCEL SERVICE and THE VIRGIN ISLANDS PORT AUTHORITY, | ) ) ) |
| Defendants. | ) ) ) |

**Attorneys:**
**Wilfredo A. Geigel, Esq.,**
**Eugenio S. Geigel, Esq.,**
**Gabriel Peñagarícano, Esq.,**
St. Croix, U.S.V.I.
 *For the Plaintiffs*

**Richard H. Hunter, Esq.,**
**Elise Catera, Esq.,**
St. Croix, U.S.V.I.
 *For the Defendant United Parcel Service*

**Douglas L. Capdeville, Esq.,**
**Mia L. Woodard, Esq.,**
St. Croix, U.S.V.I.
 *For the Defendant Virgin Islands Port Authority*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

  THIS MATTER comes before the Court on the Motion for a New Trial filed by Plaintiffs M & N Aviation, Inc. ("M&N") and Global Aerospace, Inc. (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 59. (Dkt. No. 179). Defendants United Parcel Service, Inc. ("UPS") and the

Virgin Islands Port Authority ("VIPA") have opposed Plaintiffs' Motion. For the reasons that follow, the Court will deny the Motion.

## I. BACKGROUND

On February 26, 2009 at approximately 4:00 a.m., one of M&N's airplanes—a Beechcraft 1900—arrived at Henry Rohlsen Airport in St. Croix, U.S. Virgin Islands, from San Juan, Puerto Rico, to deliver mail to the United States Postal Service ("USPS") airport facility pursuant to M&N's contract with the USPS. The aircraft was piloted by M&N employee Lawrence Lee. After landing, Mr. Lee taxied the airplane towards the ramp area in front of the Cargo Building. He made a right turn so as to position the aircraft close to the building to facilitate unloading the mail. While making the turn, the aircraft struck a stack of safety cones belonging to UPS, extensively damaging the left propeller and engine.

On September 7, 2011, M&N—in addition to Global Aerospace, Inc., and Global Aerospace Underwriters, the insurers who paid for the damaged aircraft—filed an Amended Complaint, claiming that UPS and VIPA were negligent for leaving cones in the cargo area. Plaintiffs sought to recover costs incurred as a result of the damage to the aircraft. (Dkt. No. 64). Defendants UPS and VIPA responded that they were not negligent, claiming instead that M&N and its pilot, Lawrence Lee, were at fault for the accident.

The trial in this matter took place over six days, from August 13-20, 2012. The Court summarizes only those portions of the testimony that are relevant to the disposition of Plaintiffs' Motion.[1]

---

[1] Plaintiffs did not submit nor cite any portion of the trial transcript in support of their Motion for a New Trial. Accordingly, the following discussion summarizes the trial testimony without citations.

A. **Summary of the Evidence**

Mr. Lee testified that, on the day of the incident, he had just landed and was taxiing the airplane to the Cargo Building in order to off-load the 4,000-plus pounds of mail the aircraft was carrying. He was in the process of making a right-hand turn so that the airplane's door would face the cargo bay. His primary focus was not to hit the building or the trucks and cars parked next to the building. All of the airplane's lights were illuminated (a nose light and two landing lights), lighting the area immediately in front of the plane. Mr. Lee stated that his visibility from the cockpit was limited, given the airplane's configuration and also because of a high intensity white light that was shining from a nearby lightpole, which partially blinded him. He was asked on cross-examination if the lighting was different on the evening of the incident compared to the approximately 400 prior occasions that he had landed at the Rohlsen Airport. Mr. Lee responded that it was the same. He was also asked whether he had mentioned in a letter written later on the day of the accident to Rafael Ramos, M&N Director of Operations, reporting on the incident, that the blinding light contributed to causing the accident. Mr. Lee responded that he did not. He also admitted that an M&N aircraft that arrived shortly after the incident had no problem with the lighting in the area.

Halfway through the turn, the aircraft struck something. When he exited the airplane, Mr. Lee saw that one of the left propellers had been torn off and cone debris was scattered nearby. Mr. Lee acknowledged that, as the pilot, he was responsible for the operation of the aircraft, which included observing whether there were any objects in the taxi area that might be an aircraft safety hazard. He also admitted that the airplane lights would have illuminated the cones before he hit them, and that some of the cones had reflective tape around them. He testified that he did not focus on whether anything was on the runway or in the ramp area in front of the

airplane; he simply made a "quick scan" and did not see anything before he hit the cones. He observed that a "quick scan" was obviously not enough in this case, and agreed that it was a "fair statement" that he was obligated to give more than a "quick scan" for hazardous items when—as here—M&N did not have air handlers to guide the airplane to a stop. In his letter to Mr. Ramos, Mr. Lee stated, "[i]n hindsight, I had focused my attention on the mail facilities not giving sufficient notice to the ramp." (UPS Ex. C).

UPS counsel queried Mr. Lee about his deposition testimony during which he stated that, as he began to make the right-hand turn, the airplane was traveling at 10-15 miles per hour. At trial, Mr. Lee asserted that there was no way to gauge how fast he was traveling, and that the 10-15 mph figure was just an estimate. Mr. Lee further stated that he had slowed down sufficiently when making the turn.

UPS counsel also questioned Mr. Lee on how close the airplane was to the building. Mr. Lee agreed that, when he had completed the turn, the closest part of the airplane would have been approximately twenty feet from the building. He stated that it was his intention to come within twenty feet of the building and park there, because it put the aircraft's cargo door close to the building to facilitate unloading. Mr. Lee stated that he was aware of the rule that he was not supposed to be operating aircraft within fifty feet of the Cargo Building.

Also elicited during cross-examination were the details of Mr. Lee's ongoing employment disputes with M&N management. A few hours before he left San Juan for St. Croix, on the morning of the incident, Mr. Lee received a hand-delivered letter from Mr. Ramos which referred to Mr. Lee's tardiness problem that Mr. Ramos and M&N President Jose Maldonado had discussed with him "a lot of times"—the latest incident being February 24, 2009. (UPS Ex. U). Mr. Ramos wrote that Mr. Lee "continue[d] to challenge all of our requests of timely arrivals

to work, and you [Mr. Lee] insist on arriving to work whenever you desire." *Id.* He informed Mr. Lee that the letter would serve as the company's "last warning" to report to work at the time requested by the company. *Id.* The letter concluded that Mr. Lee's failure to comply with the work schedule would result "in disciplinary action that may include a suspension from work without pay or a termination from employment." *Id.*[2]

On March 3, 2009—within a week after the incident at issue—M&N fired Mr. Lee. (UPS Ex. V). When asked why he was terminated, Mr. Lee responded that the "majority reason" was because of the February 26, 2009 incident. Mr. Lee subsequently filed a wrongful termination action against M&N. Then, after unsuccessfully looking for work for twelve to thirteen months, Mr. Lee sought re-employment with M&N. At first he testified that there was no agreement between him and M&N that, when M&N re-hired him, he would drop the lawsuit and testify on behalf of M&N in this case. Under further questioning, he conceded that there was "some discussion" in that regard, and that it was his understanding that he would be a "key witness" in the instant matter.

Mr. Lee conceded that the Federal Aviation Administration ("FAA") Inspector who investigated the incident found that Mr. Lee had caused the accident. The FAA Accident/Incident Report indicated that the accident could have been avoided with the use of

---

[2] Mr. Lee also testified that he had some heated discussions with Mr. Maldonado concerning work-related issues in late January and early February 2009. Mr. Lee tendered a verbal resignation on January 28, 2009 (UPS Ex. R), which he sought to withdraw on January 29, 2009. (UPS Ex. S). M&N permitted him to withdraw the verbal resignation on February 3, 2009. (UPS Ex. T). An October 29, 2008 letter of reprimand from M&N to Mr. Lee, prompted by M&N's inability to contact him (UPS Ex. P), and a January 11, 2009 letter of reprimand concerning his "total disrespect to company policy" (UPS Ex. Q), were also admitted into evidence.

ground handlers. (UPS Ex. E).[3] Item 21 of the Report, entitled "Factors," indicated that the primary operational factor causing the accident was "pilot induced." *Id.*

Kevin Twiss, a pilot and the representative of Global Aerospace, Inc., testified that after he was notified of the accident and viewed color photographs taken from the scene, he sent an e-mail to Mr. Maldonado. In that e-mail, Mr. Twiss commented: "With the reflective tape on the cones and with the taxi lights on, it is hard to understand how the pilot did not see the cones." (UPS Ex. CC).

Noel Tirado, a VIPA police officer, testified that he investigated the accident and generated a report. (UPS Ex. B). He stated that Mr. Lee told him that he was taxiing to the ramp, made a 180-degree turn, and struck several safety cones that he did not see. Officer Tirado reported that he was able to read Mr. Lee's driver's license on the scene, indicating that the area where the accident took place was well illuminated. Mr. Lee did not mention anything about being blinded by a light as a contributing cause of the accident. Officer Tirado further testified that he patrolled the area once or twice during the night. He testified that he had been given no training as to what may be dangerous to aircraft in the ramp area, but that he would have done something about a dangerous condition if he had seen it.

Excerpts from the deposition testimony of Hyacinthia Clarke of UPS were read into evidence. She stated that only one UPS plane flew into St. Croix daily—around noon—and left at 6:45 p.m. Cones would be placed around the airplane and then removed before the plane left. The cones were normally stored inside or just outside of the Cargo Building.

---

[3] VIPA Assistant Executive Director David Mapp testified that aircraft carriers such as M&N are responsible for providing their own ground handlers.

David Mapp, VIPA Assistant Executive Director, testified that VIPA controlled the Airport Operations Area ("AOA")[4] at the airport. FAA regulations require VIPA to have a Foreign Object Debris ("FOD") program. Mr. Mapp stated that a safety cone was not FOD, as the term is used by the FAA, clarifying that FOD refers to debris that can be ingested by an airplane engine. He stated that if cones were in the movement area, they would be "misplaced," but that would not make them foreign objects. Mr. Mapp testified that, before the accident, VIPA had established a "hard and fast rule" that no part of an aircraft was permitted to come closer than fifty feet of the Cargo Building, and that there was a faded line indicating that perimeter.

Jose Maldonado, owner of M&N, testified that safety cones, left stacked and unattended, could be FOD. On cross-examination, Mr. Maldonado stated that he initially thought that Mr. Lee caused the accident and, as a kneejerk reaction, suspended him. Mr. Maldonado further testified that he decided to rehire Mr. Lee after a year because the accident was not Mr. Lee's fault but UPS's fault. He also testified that the cones, not the lighting, caused the accident.

Rafael Ramos, M&N's Director of Operations, testified about M&N's Flight Operations Manual which contained company rules for operating aircraft. (UPS Ex. O). Mr. Ramos stated that Section 4.81, Lookout, provided that where the pilot was the only crew member, it was the pilot's responsibility to be alert to see objects on the ground that might pose a hazard to the aircraft. Section 4.78 of the Manual instructed M&N pilots to taxi at slow, safe speeds and to avoid sharp turns and sudden stops. *Id.* Although he testified he was not aware of the fifty-foot rule, he was confronted with and read from his deposition testimony in which he had previously stated that he knew about the rule. Mr. Ramos also acknowledged that the FAA Incident Report indicated that FOD was not a cause of the accident.

---

[4] Mr. Mapp testified that the Airport Operations Area encompasses any area on the airfield that is considered a secure or restricted area.

The deposition testimony of VIPA Officer Melville Holder was read into the record. Officer Holder came on duty at 6:00 a.m. on the morning of the accident and assisted Officer Tirado in the accident investigation. Officer Holder stated that he was not able to figure out who had placed the cones on the AOA. If he had seen cones on the ramp, he would have removed them. A UPS employee he interviewed admitted that some of the cones involved in the accident belonged to UPS.

UPS submitted Proposed Jury Instruction 7, which addressed "Pilot Responsibility for Aircraft." UPS's proposed instruction provided, in part:

> Aviation safety is governed by federal law as set forth under the Federal Aviation Act and its regulations. Pursuant to that standard, no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another. The pilot is in command of the aircraft, is directly responsible for its operation[,] and has final authority as to its operation.

(Dkt. No. 117 at 8-9). The proposed instruction was supported by case law and other authority, including 14 C.F.R. § 91.13. *Id.* The Court instructed the jury that "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." (Dkt. No. 176 at 10).

At the conclusion of the trial, the jury returned a verdict in favor of Defendants, finding neither UPS nor VIPA were negligent on any of the damage claims asserted against them by Plaintiffs. (Dkt. No. 177). The Court entered Judgment in favor of Defendants (Dkt. No. 169), and an Order Dismissing the Case on August 24, 2012.

Plaintiffs move for a new trial, asserting that the jury's verdict was against the weight of the evidence, and that the instruction based on 14 C.F.R. § 91.13 should not have been charged to the jury. (Dkt. No. 179). Defendants oppose the Motion. (Dkt. Nos. 183, 186).

## II.     DISCUSSION

### A. Standard of Review

      Fed. R. Civ. P. 59(a)(1), entitled "Grounds for New Trial," provides:

The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

> (A)  after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]

Fed. R. Civ. P. 59(a)(1)(A). A court may grant a new trial where:

> (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly-discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; . . . (4) the jury's verdict was facially inconsistent[; or (5) in] situations where there have been prejudicial errors of law, such as erroneous evidentiary rulings and/or jury instructions.

*Univ. of Pittsburgh of Com. Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, 877 F. Supp. 2d 294, 304 (W.D. Pa. 2012) (citing *Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584 (D.N.J. 1997) and *Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992)). "In general, courts will sustain jury verdicts if, drawing all reasonable inferences in favor of the prevailing party, there is a reasonable basis to uphold the verdict; courts will examine the record for evidence that could reasonably have led to the jury's verdict." *Lawler v. Laidlaw Carriers Flatbed GP, Inc.*, 875 F. Supp. 2d 443, 446-47 (E.D. Pa. 2012); *see also Watson v. Se. Pa. Transp. Auth.*, 1998 WL 633654, at *2 (E.D. Pa. Aug. 26, 1998) ("When considering a motion for a new trial, the evidence and reasonable inferences must be viewed in the light most favorable to the prevailing party.").

      The decision to grant or deny a new trial "is confided almost entirely to the discretion of the district court," *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992), although the

scope of that discretion depends upon whether the alleged error is based on a prejudicial error of law, such as an erroneous jury instruction, or a verdict alleged to be against the weight of the evidence. *See Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). In the former circumstance, the court has wider latitude in ruling on the motion, and will grant a new trial on claims of erroneous jury instructions "when it finds that those errors are substantial." *Murray v. Ennis*, 2013 WL 1814888, at *1 (3d Cir. May 1, 2013) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). In the latter circumstance, "the court must be cautious not to usurp the proper role of the jury" and therefore the court "has more limited discretion" when the basis of the motion is that the verdict is against the weight of the evidence. *Dean v. Specialized Sec. Response*, 876 F. Supp. 2d 549, 553 (W.D. Pa. 2012). "'[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999) (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)); *see also V.I. Maritime Serv., Inc. v. P.R. Maritime Shipping Auth.*, 978 F. Supp. 637, 647 (D.V.I. 1997) ("A court must tread carefully when a Rule 59 motion is predicated on th[e] ground [that the verdict is against the weight of the evidence] since, 'to some extent at least, [the court must] substitute [its] judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts.'") (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960)).

In any event, "[r]equests for a new trial are disfavored by the law." *Dean*, 876 F. Supp. 2d at 553; *see also Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 128 (3d Cir. 2003)

(granting a new trial requires meeting a "high threshold"); *Montgomery Cnty. v. MicroVote Corp.*, 152 F. Supp. 2d 784,795 (E.D. Pa. 2001) ("Absent a showing of substantial injustice or prejudicial error, a new trial is not warranted[.]") (internal quotation marks omitted).

### B. The Weight of the Evidence

Plaintiffs argue that the jury's finding that Defendants UPS and VIPA were not negligent was inconsistent with the evidence presented at trial. Both UPS and VIPA denied that they were negligent, and pleaded the affirmative defense of contributory negligence.

To establish negligence under Virgin Islands law, a plaintiff must demonstrate "(1) a duty; (2) a breach of that duty; (3) causation; and (4) damages." *Josse v. United States*, 2013 WL 152170, at *2 (D.V.I. Jan. 11, 2013) (citing *Torchin v. Blue Shore Grill, LLC*, 2012 U.S. Dist. LEXIS 123491, at *7-*8 (D.V.I. Aug. 30, 2012)).

"'Credibility determinations are the unique province of a fact finder,'" *Hoggard v. Allstate Ins. Co.,* 2005 WL 6786727, at *1 (3d Cir. Dec. 21, 2005) (quoting *Scully v. U.S. WATS,* 238 F.3d 497, 506 (3d Cir. 2001)), and "a jury may rationally reject even uncontradicted testimony which it finds unconvincing." *Kerzner v. Global Upholstery Co.,* 1997 WL 727692, at *1 (E.D. Pa. Nov. 19, 1997) (citing *Semper v. Santos,* 845 F.2d 1233, 1237 (3d Cir.1988)); *see also Todd v. Luzerne Cnty. Children & Youth Servs.,* 2011 WL 841429, at *2 (M.D. Pa. Mar. 8, 2011) (opining that where evidence is in conflict, and subject to two or more interpretations, the trial judge should be reluctant to grant a new trial) (citing *Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir. 1993)).

Viewing the evidence and inferences in the light most favorable to Defendants, there is a wealth of evidence from which one could conclude that there is a reasonable basis to uphold the jury's verdict. Thus, contrary to Plaintiff's contentions, the verdict is not against the clear weight

of the evidence so as to warrant a new trial to prevent a miscarriage of justice. *See* Fed. R. Civ. P. 59(a)(1)(A).

That this is so is confirmed by a review of the evidence. Mr. Lee conceded that the accident was his fault. Both in his testimony and in his February 26, 2009 letter to Mr. Ramos, he explained that he had improperly focused his attention on the Cargo Building, not the ramp where the cones were located and where he was taxiing the aircraft. Although he claimed to have made a "quick scan" of the area, the jury could have disbelieved that testimony, or simply could have determined that his "quick scan"—as Mr. Lee himself admitted—was insufficient. Mr. Lee also admitted impacting the cones within fifty feet of the building, which violated a VIPA rule of which he was aware that aircraft were not allowed to operate that close to the Cargo Building. Although he attempted to distance himself from the statements he made in his deposition that he had been taxiing at 10-15 miles per hour when he started to make the turn, the jury could have rejected that effort to modify his testimony and could have found that he was taxiing too fast. The jury also could have concluded that Mr. Lee's testimony that he was partially blinded by the overhead light, as an allegedly contributing factor to the accident, was undermined by his acknowledgment that he had never complained about that problem on any of his 400 previous flights to the Henry Rohlsen Airport, nor did he mention the blinding lights in any of his accounts of the accident. Further, the FAA Accident/Incident Report identified "Pilot Induced" as an "Operational Factor" for the accident, and did not indicate that FOD was a contributing cause. Finally, M&N fired Mr. Lee days after the accident; Mr. Maldonado testified that he initially thought that Mr. Lee had caused the accident; and Mr. Lee conceded that the accident was the primary reason for his firing. The ongoing employment disputes between Mr. Lee and M&N around the time of the accident, together with the circumstances surrounding the firing and

subsequent rehiring of Mr. Lee, could all reasonably have factored into the jury's ultimate conclusion.

Even where the evidence may have been conflicting, it was within the jury's province to determine the facts in this case. In their assessment—which was reasonably supported by the evidence—they concluded that Mr. Lee was negligent, not UPS or VIPA. *See Hoggard,* 2005 WL 6786727, at *1.

Plaintiffs' arguments to the contrary are unavailing. First, Plaintiffs claim that Defendants offered "no evidence at all to contradict Plaintiffs' liability witnesses," including Mr. Mapp, Mr. Maldonado, or Mr. Ramos "who testified regarding the aspects of the FOD improperly left on the AOA, which can be disastrous and the purpose of the FAA and airport regulations." (Dkt. No. 179 at 4, 6). According to Plaintiffs, "[t]he three witnesses testified that FODs must be immediately removed and when improperly left, cones become FODS, consequently dangerous." *Id.* at 6. This argument flows from Plaintiffs' theory of the case that UPS created a dangerous condition by leaving its cones unattended on the AOA, and VIPA created a dangerous condition by its failure to remove them. (Dkt. No. 193 at 6).

At the very least, this argument mischaracterizes Mr. Mapp's testimony, as he stated that the cones were *not* FOD, and even if cones were left on the AOA, that did not transform them into FOD. Further, Mr. Ramos acknowledged that the FAA report did not cite FOD as a cause of the accident. Although Mr. Maldonado claimed that the cones were FOD, he also admitted on cross-examination that he initially thought that Mr. Lee was responsible for the accident. Indeed, Mr. Maldonado fired Mr. Lee as a result of the accident and did not rehire him until approximately a year later under circumstances that the jury could have found questionable as it relates to this case.

In any event, even assuming that Plaintiffs' proffered evidence—as they claim—was uncontradicted, "a jury may rationally reject even uncontradicted testimony that it finds unconvincing." *Kerzner*, 1997 U.S. Dist. LEXIS 18457, at *4. This is especially true here, where there was sufficient evidence for the jury to reject Plaintiffs' theory that focused on FOD and find that Mr. Lee was responsible for the accident.

Second, Plaintiffs conclusorily argue that, in order to escape liability, Defendants would have to show the contributory fault of Mr. Lee by a preponderance of the evidence, which they failed to do. (Dkt. No. 179 at 6-7). While "[t]he burden of establishing the plaintiff's contributory negligence rests upon the defendant," *Restatement (Second) of Torts* § 477 (1965), the predicate required for a court to even address the question of contributory negligence is that plaintiff must first establish a prima facie case of negligence. *See id.* cmt. a (observing that "*[i]f* the plaintiff makes out a prima facie case, the defendant, if he relies upon the plaintiff's contributory negligence, must prove it.") (emphasis added).

Based on the evidence discussed above, a jury reasonably could have found that Plaintiffs failed to establish Defendants' negligence. As a result, the issue of contributory negligence would not arise, and there would be no basis for a new trial grounded in Defendants' failure to prove contributory negligence. *See Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 909 (6th Cir. 2006) ("Where the evidence indicates that the plaintiff's own negligence was the sole proximate cause of the plaintiff's injuries, then the plaintiff cannot establish a prima facie case. In such cases, the plaintiff does not lose because of his or her contributory negligence but rather because the defendant was not negligent."); *cf. Groom v. Days Inn of Am., Inc.*, 62 F.3d 204, 208 (7th Cir. 1995) (where plaintiffs argued that they were entitled to new trial because defendant failed to rebut the presumption of negligence or establish contributory negligence on the part of

one of the plaintiffs, the court held that because the plaintiffs were required to establish a prima facie case prior to assessing a defendant's negligence or plaintiff's contributory negligence, and because plaintiffs failed to meet that burden, the trial court did not abuse its discretion in denying plaintiffs' motion for a new trial). The possibility of this result was reflected on the verdict form, approved by the parties. *See* Dkt. No. 177.

And, the jury so found. Specifically, the jury concluded that Defendants were not negligent, and therefore never reached the issue of contributory negligence. Based on the evidence presented, there is a reasonable basis to uphold this verdict.

Third, Plaintiffs contend that the jury failed to take into account the testimony of the two VIPA policemen, Tirado and Holder, who asserted that they never received instructions concerning the removal of FOD from the AOA. (Dkt. No. 179 at 6). The Court properly instructed the jury that it was free to accept or reject the testimony of any witness in determining the facts. The jury instructions provided:

> After you make your own judgment about the believability of a witness, you can then attach to that witness' testimony the importance or weight that you think it deserves.

(Dkt. No. 176 at 8).

The jury was properly charged, without objection, that it could attach to each witness's testimony the importance or weight that it deserves. Based on the evidence discussed above, the jury could reasonably have determined that this case was not about FODs, but about pilot fault. As a result, the jury could reasonably have determined that the Officers' testimony regarding whether they received instructions concerning the removal of FODs was of less—or no—significance, and the jury, accordingly, could have given it little—or no—weight.

In view of the foregoing, the Court finds that, viewing the evidence in the light most favorable to Defendants, there is a reasonable basis to uphold the jury's verdict, and that verdict was not against the weight of the evidence. Accordingly, Plaintiffs' request for a new trial on the grounds that the jury's verdict was against the weight of the evidence will be denied.

## C. Jury Instruction

Plaintiffs assert that "since no evidence was presented to support negligence on the part of plaintiffs, the FAR 91.13 should not have been charged to the jury." (Dkt. No. 179 at 8). This argument also lacks merit.

First, Plaintiffs' challenge to the jury instruction is based on a faulty premise—that "no evidence was presented to support negligence on the part of plaintiffs[.]" As discussed in detail above, there was more than sufficient evidence presented to support a finding of negligence on the part of Plaintiffs.

Moreover, Plaintiffs' generalized protest against the 14 C.F.R. § 91.13 jury instruction is without merit. "A party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law." *Douglas v. Owens,* 50 F.3d 1226, 1233 (3d Cir. 1995) "It is the responsibility of the trial judge to provide the jury with a clear and accurate statement of the law it is expected to apply in reaching its verdict." *McPhee v. Reichel,* 461 F.2d 947, 950 (3d Cir. 1972). The trial court has broad discretion in the composition of jury instructions, as long as they are fundamentally accurate and not misleading. *Owens,* 50 F.3d at 1233 (citing *Harrison v. Otis Elevator Corp.,* 935 F.2d 714, 717 (5th Cir.1991)). In this regard, FAA regulations may properly be used as the standard of care in cases involving the operation of aircraft. *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 371 (3d Cir. 1999) ("In determining the standards of care in an

aviation negligence action, a court must refer not only to specific regulations but also to the overall concept that aircraft may not be operated in a careless or reckless manner.").

The instruction at issue, taken from 14 C.F.R. § 91.13, reads as follows:

> Aviation safety is governed by federal law as set forth under the Federal Aviation Act and its regulations. FAA regulations define, in part, the standard of care to which Plaintiff M&N Aviation, Inc. and Defendant Virgin Islands Port Authority must adhere.
>
> As relevant to this case, those regulations provide:
>
> * * *
> 4) No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

(Dkt No. 176 at 9-10).[5] The instruction was a "clear and accurate statement of the law." *McPhee*, 461 F.2d at 950.[6]

Evidence was elicited at trial that Mr. Lee was taxiing the aircraft too fast; not keeping a proper lookout; and operating the aircraft too close to the Cargo Building. Mr. Lee also admitted that it was his responsibility to ensure that the aircraft did not impact anything and to diligently observe if there were items in the ramp area that would be hazardous to the aircraft. Thus, in view of the evidence presented, it was appropriate to include a jury instruction regarding the proper standard of care against which the facts of the case should be assessed by the jury in evaluating M&N's conduct. Accordingly, Plaintiffs' challenge to the jury instruction is without

---

[5] Item numbers (1) to (3) of this jury instruction that are excluded from the text above applied to Defendant VIPA.

[6] 14 C.F.R. § 91.13(a), entitled "careless or reckless operation," states:

> (a) Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

14 C.F.R. § 91.13(a).

merit and the Court will deny Plaintiffs' motion for a new trial based on an allegedly erroneous jury instruction.[7]

### III. CONCLUSION

For the reasons set forth above, the Court will deny Plaintiffs' Motion for a New Trial pursuant to Fed. R. Civ. P. 59(a).

Date: September 23, 2013 _____/s/_____
WILMA A. LEWIS
Chief Judge

---

[7] Based on the Court's review of this matter, a serious question exists as to whether M&N objected to the jury instruction prior to the filing of its Motion for a New Trial. If a party fails to object to a jury instruction, reviewing courts apply a discretionary plain error standard, and will reverse a district court only if it committed plain error. *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 339 (3d Cir. 2005); Fed. R. Civ. P. 51(d).