**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| M & N AVIATION, INC., GLOBAL | ) | |
| AEROSPACE, INC., and GLOBAL | ) | |
| AEROSPACE UNDERWRITERS, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 2010-083** |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, INC., and | ) | |
| THE VIRGIN ISLANDS PORT AUTHORITY, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**
**Wilfredo A. Geigel, Esq.,**
**Gabriel Peñagarícano, Esq.,**
St. Croix, U.S.V.I.
         *For the Plaintiffs*

**Richard H. Hunter, Esq.,**
**Elise Catera, Esq.,**
St. Croix, U.S.V.I.
         *For the Defendant United Parcel Service*

**Douglas L. Capdeville, Esq.,**
**Mia L. Woodard, Esq.,**
St. Croix, U.S.V.I.
         *For the Defendant Virgin Islands Port Authority*


<u>**MEMORANDUM OPINION**</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Motion for Costs and Attorney's Fees

filed by Defendant United Parcel Service, Inc. ("UPS"). (Dkt. No. 178). Plaintiffs M&N

Aviation, Inc. ("M&N"), Global Aerospace, Inc., and Global Aerospace Underwriters

(collectively, "Plaintiffs") have opposed the Motion. (Dkt. No. 192). For the reasons that follow, the Court will grant in part and deny in part UPS's Motion.

## I.   PROCEDURAL HISTORY

On February 26, 2009 at approximately 4:00 a.m., one of M&N's airplanes—a Beechcraft 1900—arrived at Henry Rohlsen Airport on St. Croix, U.S. Virgin Islands, to deliver mail to the United States Postal Service ("USPS") airport facility pursuant to M&N's contract with the USPS. The aircraft was piloted by M&N employee Lawrence Lee. After landing, Mr. Lee taxied the airplane towards the ramp area in front of the Cargo Building. He made a right turn so as to position the aircraft close to the building to facilitate unloading the mail. While making the turn, the aircraft struck a stack of safety cones belonging to UPS, extensively damaging the left propeller and engine.

On September 7, 2011, M&N—in addition to Global Aerospace, Inc., and Global Aerospace Underwriters, the insurers who paid for the damaged aircraft—filed an Amended Complaint, claiming that Defendants UPS and Virgin Islands Port Authority ("VIPA") were negligent for leaving cones in the cargo area. Plaintiffs sought to recover costs incurred as a result of damage to the aircraft. (Dkt. No. 64). UPS and VIPA responded that they were not negligent; rather, M&N and its pilot, Lawrence Lee, were at fault for the accident.

The trial in this matter took place over six days, from August 13-20, 2012. At the conclusion of the trial, the jury returned a verdict in favor of the Defendants, finding neither UPS nor VIPA negligent on any of the damage claims asserted against them by Plaintiffs. (Dkt. No. 177). The Court entered Judgment in favor of Defendants on August 21, 2012 (Dkt. No. 169), and an Order Dismissing the Case on August 24, 2012.

On August 29, 2012, UPS filed the instant Motion for Costs and Attorney's Fees (Dkt. No. 178), which Plaintiffs opposed. (Dkt. No. 192). UPS filed a Reply. (Dkt. No. 197).

## II.     APPLICABLE LEGAL PRINCIPLES

### A. Costs

UPS brings its motion for costs and attorney's fees pursuant to Rule 54 of the Federal Rules of Civil Procedure, and 5 V.I.C. § 541 of the Virgin Islands Code. (Dkt. No. 179 at 2).

Fed. R. Civ. P. 54(d), governing costs, provides, in pertinent part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). There is a "strong presumption" that costs are to be awarded to the prevailing party. *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462 (3d Cir. 2000). "Only if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party." *Id.* at 468. In addition, "the losing party bears the burden of making the showing that an award is inequitable under the circumstances." *Id.* at 462-63. If a district court "within its discretion, denies or reduces a prevailing party's award of costs, it must articulate its reasons for doing so," *Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010) (citing *In re Paoli*, 221 F.3d at 468) because "the denial of such costs is akin to a penalty." *Id.* (citing *ADM Corp. v. Speedmaster Packaging Corp.,* 525 F.2d 662, 665 (3d Cir. 1975)).

The Virgin Islands Code explains the applicability of Rule 54(d)(1) to the assessment of costs in the Virgin Islands:

> This Rule specifies when costs are allowed, and the procedure for taxing them, but it does not provide what items are included in costs. 28 U.S.C. §§ 1911-1929, which cover the latter subject, are not applicable to the district court of the Virgin

3

Islands under 28 U.S.C. § 451. Therefore, it appears that local provisions, such as the present section [5 V.I.C. § 541], are needed to determine what costs shall be allowed.

5 V.I.C. § 541, History, Allowance of costs. Under local law, the following costs are allowed in a civil action:

(1) Fees of officers, witnesses, and jurors;
(2) Necessary expenses of taking depositions which were reasonably necessary in the action;
(3) Expenses of publication of the summons or notices, and the postage when they are served by mail;
(4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure;
(5) Necessary expense of copying any public record, book, or document used as evidence on the trial; and
(6) Attorney's fees as provided in subsection (b) of this section.

5 V.I.C. § 541(a). *See also* 5 V.I.C. § 543, "Taxation of costs."

## B. Attorney's Fees

Fed. R. Civ. P. 54(d), governing attorney's fees, provides:

Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

Fed. R. Civ. P. 54(d)(2)(A). Since Rule 54(d)(2) simply "recognizes the possibility of awards of attorney's fees and related non-taxable expenses and establishes a procedure for asserting a right to such an award," *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995) (internal quotations omitted), courts "must look to another source of substantive law to determine whether a party is entitled to attorney's fees." *Warren Distrib. Co. v. InBev USA, LLC,* 2011 WL 770005, at *7 (D.N.J. Feb. 28, 2011). As the Third Circuit has ruled, "the right of a party or an attorney to recover attorney's fees from another party in a diversity action is a matter of state substantive law." *Mitzel v. Westinghouse Elec. Corp*. 72 F.3d 414, 417 (3d Cir. 1995) (citing, *inter alia*,

4

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975)). Because this case is in federal court on diversity jurisdiction, Virgin Islands law applies in assessing the propriety and reasonableness of attorney's fees. *See Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 542 (3d Cir. 1988) ("[I]n a diversity case[,] state law ordinarily governs the award of attorney['s] fees.").

The Virgin Islands Code provides for attorney's fees to be awarded to the "prevailing party" in "such sums as the court in its discretion may fix by way of indemnity . . . in maintaining the action or defenses thereto[.]" 5 V.I.C. § 541(b); *see Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205, 1207 (3d Cir. 1969) ("The amount of attorney's fees to be awarded to the prevailing party is discretionary with the court, as the statute states . . . .") (citing 5 V.I.C. § 541 and *Tebbs v. Alcoa Steamship Co.*, 241 F.2d 276 (3d Cir. 1957)). The purpose of Section 541 "is to indemnify the prevailing party, and 'the policy behind the statute is that a party should not have to bear the legal expenses of demonstrating either that it is not at fault or that it is the victim of another's fault.'" *Int'l Leasing & Rental Corp. v. Gann*, 2010 WL 1284464, at *1 (D.V.I. Mar. 23, 2010) (quoting *Bedford v. Pueblo Supermarkets of St. Thomas, Inc.*, 18 V.I. 275, 278, 1981 U.S. Dist. LEXIS 9369, at *3 (D.V.I. Jan. 22, 1981)).

Once a court determines that attorney's fees shall be awarded,

> it must then determine what constitutes a reasonable attorney['s] fee for a given matter. The presumptively reasonable "lodestar" rate consists of the hours worked multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983); *Jo–Ann Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*, No.1989–106, 1995 WL 78299, at *4–5 (D.V.I. Feb. 9, 1995). After conducting this calculation, a court may then adjust the amount to "take into account any other relevant factors that are not already adequately represented in the lodestar calculation." *Equivest St. Thomas, Inc. v. Gov't of the V.I.*, No. 2001–155, 2004 WL 3037953, at *2 (D.V.I. Dec. 31, 2004).

*Grand Union Supermarkets v. H.E. Lockhart Mgmt., Inc.,* 2013 WL 163830, at *2 (D.V.I. Jan. 10, 2013). "To determine a fair and reasonable award of attorney['s] fees, the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). A court may reduce a fee award if a bill includes an excessive amount of time to perform a task or contains duplicative entries. *Bank of Nova Scotia v. Abdallah*, 2013 WL 1846544, at *5 (D.V.I. May 2, 2013) (citing *First Bank P.R. v. Caribbean Island Adventure, Inc.*, 2008 WL 783537, at *2 (D.V.I. Mar. 20, 2008) and *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir. 1993) (refusing to reimburse a party for particular billing entries that reflect work "that was billed excessively or repeatedly")).

In accordance with these principles,

> the Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands,* 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.,* 2012 WL 369535 at *10.

*Abdallah*, 2013 WL 1846544, at *5.

Plaintiffs do not challenge UPS's status as a prevailing party in this litigation. *See Melendez v. Rivera*, 24 V.I. 63, 65, 1988 V.I. LEXIS 35, at *4-5 (Terr. Ct. Oct. 28, 1988) (stating that a prevailing party under § 541 is "one in whose favor a decision or verdict is rendered and a

judgment is entered."). Thus, the only issue before the Court is the amount of costs and fees to be awarded.

### III.   DISCUSSION

Plaintiffs advance three preliminary arguments before making their specific objections to UPS's Motion for Costs and Attorney's Fees. First, they interpret UPS's motion as alleging that Plaintiffs acted in bad faith in pursuing the lawsuit, and assert—to the contrary—that they had a legitimate theory of the case. UPS denies making such an argument (Dkt. No. 197 at 2) which, in any event, would be unnecessary because a showing of bad faith is not required to support an award of attorney's fees and costs in the current context.[1]

Plaintiffs' next argument is that attorney's fees under § 541(b) "'are not intended as full reimbursement to a prevailing party, and a court has considerable latitude in this regard.'" (Dkt. No. 192 at 3) (quoting *Melendez*, 24 V.I. at 66). Plaintiffs further argue that this Court should not award all of the fees that UPS requests based on the case law that appears to discourage full reimbursement. (Dkt. No. 192 at 3-4).

In *Morcher v. Nash*, 32 F. Supp. 2d 239 (D.V.I. 1998), adjudicated a decade after *Melendez*, the Court held that "there is no 'partial reimbursement standard' implicit in section 541" and that "[t]he amount of an award rests within the sound discretion of the Court." *Id.* at 241. This Court agrees with *Morcher* that the focus in awarding attorney's fees is on whether the time billed was reasonably expended—a finding left to the court's discretion. In that context, a prevailing party may or may not be awarded all of the fees it has requested—a determination that

---

[1] This is not a personal injury case where an award of attorney's fees is prohibited "unless the court finds that the complaint filed or the defense is frivolous." 5 V.I.C. § 541(b).

will be based on the facts as presented, not on an overarching rule that full reimbursement will not be permitted *ab initio.*

Plaintiffs' final argument is that "a cautious assessment needs to be made when it has been held at the outset that Sec. 541 does not apply to the allowance of attorney's fees in the district court of the Virgin Islands if a federal claim is asserted." (Dkt. No. 192 at 4). The Court's jurisdiction here was based on diversity of citizenship. Thus, Plaintiff's argument does not apply, and the Court will make an appropriate assessment of the fee request under § 541.

## A. Costs

UPS has submitted an "Affidavit of Counsel" from Richard H. Hunter, Esq. which lists the costs UPS expended in litigating this matter. (Dkt. No. 178-5, ¶ 6). The list indicates the date the cost was incurred, a description of the expense, and the total dollar amount billed. *Id.* UPS seeks to recover $9,067.18 in costs dating from May 10, 2011 through August 21, 2012. *Id.*

In reviewing UPS's listing of costs, Plaintiffs argue, *inter alia,* that: (1) the May and September 2011 requests for process server fees should not be allowed because the purpose for which the subpoenas were issued is unknown, and the process server fee charges in July and August 2012 are not sufficiently explained; (2) while witness fees are allowed, certain witnesses (apparently related to the July 31, 2012 entry) are "not properly identified"; whether these fees are permitted under § 541 cannot be determined; and since UPS did not present at trial any witnesses they subpoenaed, these costs should not be taxed; (3) mediation-related fees are not recognized under 5 V.I.C. § 541; (4) the cost of several depositions cannot be recovered if the

depositions were not introduced at trial; and (5) FedEx charges, airfare, cab fare and meals related to depositions taken in San Juan are not allowed under § 541.[2] (Dkt. No. 192 at 15-19).

Addressing these objections in order, the Court finds that fees for process servers are reimbursable under the statute. *See Great Lakes Reinsurance (UK) PLC v. Kranig*, 2013 WL 5811929, at *4 (D.V.I. Oct. 29, 2013) (finding that service of process fees associated with subpoenas duces tecum were reimbursable under § 541(a)) (citing *Int'l Leasing & Rental Corp. v. Gann*, 2010 WL 1284464, at *3 (D.V.I. Mar. 23, 2010)).

In addition, § 541(a)(1) specifically permits reimbursement for witness fees. Accordingly, the entries for witness fees on January 9 and January 22, 2011 will be allowed.

Plaintiffs are correct that mediation-related costs are not among the costs listed in 5 V.I.C. § 541(a). *See Pacquette v. Grant*, 2012 WL 5361743, at *2 n.7 (V.I. Super. Oct. 29, 2012) (citing *Ryan v. Ryan*, 53 V.I. 140 (V.I. 2010) for the proposition that "mediation fees are not among the costs listed in 5 V.I.C. § 541(a)."). Accordingly, the Court will disallow $1,923.33 in costs related to mediation.[3]

Plaintiffs object to costs being awarded for deposition transcripts that were not introduced at trial, but provide no support for this position. Whether depositions are introduced at trial is not the standard for determining whether the expenses associated therewith are "[n]ecessary expenses of taking depositions which were reasonably necessary in the action," 5 V.I.C. §

---

[2] Defendants deposed M&N's Rule 30(b)(6) witness, pilot Lawrence Lee, and M&N's Director of Operations Rafael Ramos in San Juan. (Dkt. No. 178-5 at 5).

[3] The disallowed costs consist of: (1) an October 13, 2011 entry for "Mediation fee" of $366.67; (2) a January 27, 2012 entry for "Meals-Mediation" of $70.00; (3) a January 31, 2012 entry for "Mediation fee to AMI" of $1,273.33; and (4) an August 21, 2012 entry for "Mediation fee (cont[inuation] of settlement discussion)" of $213.33.

541(a)(2), and thus reimbursable. UPS explains, for example, that the depositions of U.S. Postal Service employees were not introduced at trial, but they were "instrumental in substantiating the existence of the 50 foot rule that played a key role in the litigation and likely had an impact on the jury's verdict in favor of UPS." (Dkt. No. 197 at 9). Plaintiffs have failed to show why the expenses for the depositions to which they object were not "reasonably necessary in the action." The Court will therefore allow reimbursement for all of the costs of deposition transcripts.

Plaintiffs' objection to the January 10, 2012 entry—"FedEx charges" for $84.25—is well taken. The entry does not describe what items were sent by overnight mail, making it impossible for the Court to determine whether the contents may fit within any of the § 541(a) categories. Moreover, generally speaking, mailing expenses are considered everyday operating expenses for a law office and will not be reimbursed. *Equivest St. Thomas, Inc.*, 2004 WL 3037953, at *9. The July 31, 2012 entry for "Express Mail (Process Server in PR)" for $18.95 will also be disallowed because general mailing costs may not be reimbursed under the statute.

With regard to the reimbursement request for travel expenses related to depositions, the longstanding rule in the Virgin Islands is that "travel expenses incurred in taking depositions will not be awarded absent special circumstances." *Lempert v. Singer*, 29 V.I. 169, 172 (V.I. 1993) (citing *Damidaux v. Hess Oil V.I. Corp.*, 18 V.I. 417, 421-22 (D.V.I. 1981) and *Kriegel v. St. Thomas Beach Resorts*, 18 V.I. 365, 365 (D.V.I. 1981)); *accord Jo-Ann's Launder Center, Inc.*, 1995 WL 78299, at *6 (finding no special circumstances "even though the . . . deposition was conducted in Baltimore, Maryland"). UPS does not explain how the travel expenses incurred in connection with depositions constitute "special circumstances." Instead, UPS cites *Terrell v. Coral World*, 2011 WL 3492575 (V.I. July 20, 2011), for the proposition that travel costs are recoverable. (Dkt. No. 197 at 13). However, the ruling in *Terrell* concerned "travel expenses

associated with *attending the trial*"—which the Court found were *not* recoverable under § 541. *Id.* at *2 (emphasis added) (citing rule that deposition expenses were not recoverable absent special circumstances). Accordingly, travel costs totaling $454.30 will be disallowed.[4]

The Court has disallowed $2,480.83 in requested costs. After subtracting that sum from the $9,067.18 in costs sought, UPS will be awarded a total of $6,586.35 in costs.

## B. Attorney's Fees

In his "Affidavit of Counsel," Attorney Hunter identified the individuals in his law firm who worked on this case for UPS and their hourly billing rates. Attorney Hunter's rate was $295.00 per hour; Associate Erika Ban's and Associate Elise Catera's rates were $175.00 per hour; and paralegal Thomas O'Brien's rate was $55.00 per hour. (Dkt. No. 178-5, ¶ 2). Attorney Hunter avers that UPS incurred legal fees of $131,790.55 in defending the case, but he subtracted fees incurred for items that did not "directly relate to defending against plaintiff's claims such as discovery issues with non-party United States Postal Service in May-September 2011." *Id.* at ¶¶ 3-4. With those deletions, UPS seeks $123,356.50 in attorney's fees from December 6, 2010 through August 28, 2012, *id.* at ¶ 4, which are detailed in a twenty-seven page "Chronological Description of Legal Services" attached to Attorney Hunter's affidavit. The Chronological Description contains columns for the date the legal services were rendered; by whom; a brief description of the work; the time spent on the task; and the total dollar amount billed. (Dkt. No. 178-6 at 1-27).

---

[4] Disallowed travel-related costs include: (1) a November 29, 2011 entry for "Airfare for San Juan depos," for $202.00; and (2) January 10, 2012 entries for "[a]irfare to San Juan for 30b6 Depositions," at $216.40; (3) "Meals for San Juan Deposition" at $15.90; and (4) "Cab Fare for San Juan Deposition" for $20.00."

In assessing the reasonableness of the hourly rates, Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). Plaintiffs here do not challenge the reasonableness of the hourly rates charged by the UPS legal team. Because the hourly billing rates charged here—to which there has been no objection—fall within the scope of rates generally charged for such services, the Court concludes that those rates are reasonable. *See Rode*, 892 F.2d at 1183.

Plaintiffs focus their attorney's fees challenge on whether the hours billed were "reasonably expended," and claim that numerous entries for time billed are "excessive, redundant, or otherwise unnecessary." *Abdallah*, 2013 WL 1846544, at *5. Their objections generally fall into three categories: (1) many of the entries lack sufficient detail to warrant reimbursement; (2) some entries are excessive for the work claimed, or relate to work normally done by paralegals or legal secretaries; and (3) some entries are for work expended on motions that were never granted or did not benefit Defendant's litigation, because the evidence related to those entries was not utilized by UPS or was otherwise "not applicable." (Dkt. No. 192 at 7-14).[5]

### 1. Alleged Lack of Detail

Plaintiffs declare that "the main problem in analyzing these legal services lies in the description or rather the lack thereof." (Dkt. No. 192 at 7). For example, Plaintiffs challenge entries such as "Letter to client(s)" on December 6, 2010, billing four-tenths of an hour at

---

[5] Plaintiffs requested an evidentiary hearing on the issue of allowable attorney's fees. (Dkt. No. 192 at 15). As discussed below, the Court does not deem such a hearing necessary to the resolution of Defendant UPS's request for attorney's fees.

$118.00, because Plaintiffs do not know "the contents or substance of that letter." *Id.* They also challenge a January 10, 2011 entry, "Preparation of Joint Motion to Amend Pleadings," billed at six-tenths of an hour for $177.00, and January 19, 2011 entries for "Draft Memo" billed at one and one-tenths hour for $192.50 and "Legal Research" billed at three-tenths of an hour for $52.50. These objections are representative of the numerous items Plaintiffs challenge on the basis of insufficient detail, either specifically or by indicating that all entries between two dates on the Chronological Description are infirm for that reason.

Billing entries that are too general, in that they do not indicate the purpose for which the attorney engaged in particular work, will not be allowed. A prevailing party must provide enough specificity in its billing entries to allow a court to assess what tasks an attorney performed when examining an application for attorney's fees. *See Lempert*, 29 V.I. at 173 (refusing to reimburse attorney's fees when application "'contains overly general entries . . . that do not indicate the purpose for which the attorneys engaged in such activity' and which have stymied the court's review.") (quoting *Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co., Ltd.*, 754 F. Supp. 459, 463 n.6 (D.V.I. 1991)); *see also Devcon Int'l Corp. v. Reliance Ins. Co.*, 2008 U.S. Dist. LEXIS 1087, at *7 (D.V.I. Jan. 2, 2008) (declining to reimburse entries for "undetailed itemizations" that were "so vague as to prevent meaningful review") (quoting *Morcher,* 32 F. Supp. 2d at 242-43).

Although the January 19, 2011 entry "Draft Memo" lacks specificity, it appears after billing entries for legal research concerning exhaustion of administrative remedies, proper party, and the Federal Tort Claims Act. In this context it is reasonable to infer that the memorandum addressed one or more of those topics. On the other hand, the "Letter to client(s)" entry for $118.00 is not sufficiently specific and will be disallowed. While the Court is mindful of the

need to protect the sanctity of attorney-client communications, a general description can be provided—as is routinely done with privilege logs—without compromising the privilege. In the same vein, the January 19, 2011 "Legal Research" entry for $52.50, without more, is not sufficiently detailed and will be disallowed. The Court has reviewed the other entries challenged by UPS and finds that UPS's billing entries—with the exception of the December 6, 2010 "Letter to client(s)" entry and the January 19, 2011 "Legal Research" entry—are sufficiently detailed for the Court to determine the service performed and whether the hours billed were reasonably expended.

### 2.   Alleged Excessiveness of Time Spent on Tasks

Plaintiffs claim that the time associated with many entries on the Chronological Description is excessive given the service performed. For example, Plaintiffs challenge: (1) a two-tenths of an hour entry on December 7, 2010 for a "Review of PR consolidation filings" as "excessive for a two page review" (Dkt. No. 192 at 7); (2) a January 31, 2011 two-hour entry for preparation of a status report because "a case that had only been filed a couple of months earlier renders the appearance as one of excessive billing," *id.* at 8; (3) a July 22, 2011 two and three-tenths hour entry for "preparation of letter [to] opposing counsel re: inadequacy of production of documents" as "excessive in view of [its] description," *id.* at 9; (4) consecutive entries from September 13 through October 25, 2011 at two-tenths of an hour each (for "Preparation of Notice of Service"; "Preparation of email status report"; "Email with client re: experts"; "Telephone conf. with John Anzalone, counsel for US Postal Service re: production request") as "in excess of time which defense counsel should spend on them," *id.* at 10; and (5) an October 31, 2011 nine-tenths of an hour status conference which appears excessive to Plaintiffs because "[s]tatus conferences usually take no more than fifteen to twenty minutes." *Id.*

14

The Court does not find these entries for work performed, or the numerous other entries cited by Plaintiffs, as involving excessive time. Twelve minutes to review a filing, even a two-page filing, or to prepare a notice of service or to send an e-mail to one's client, is not an unreasonable amount of time to spend on such tasks under the circumstances here. Nor is a two-hour entry for preparation of a status report, collating two months of extensive activity in this case[6] an excessive amount of time to spend in bringing the client up to date on the status of the case. Similarly, a two-hour-plus entry to inform opposing counsel of the "inadequacy of production of documents"—given 207 documents produced by M&N—is not excessive. Further, Plaintiffs' conclusory argument that certain two-tenths of an hour entries between September 13 through October 25, 2011 are "in excess of time which defense counsel should spend on them" is entirely without foundation. In sum, the Court has reviewed these and similar objections by Plaintiffs to counsel's billing entries for excessiveness, and finds that Plaintiffs have not shown that the fees sought are inequitable, unreasonable, or excessive based on the time required to complete the particular tasks.

Plaintiffs raise a number of other challenges to billing entries submitted by counsel for UPS. For example, Plaintiffs assert that time billed for conferences between counsel of the same firm is not reimbursable in this jurisdiction. The Chronological Description reflects thirteen brief

---

[6] The activity during the two-month period included review of discovery documents concerning the accident; the filing of a motion to dismiss UPS Worldwide; legal research on a myriad of issues; and preparation of discovery responses.

conferences or discussions between Attorney Catera and Attorney Hunter, totaling 1.7 hours.[7]
Attorney Catera was the only attorney who billed the time.

In *Morcher*, the Court found that client meetings and single-lawyer conferences with
opposing counsel are reimbursable under § 541(b). *Morcher,* 32 F. Supp. 2d at 241. The *Morcher*
Court also ruled that "[m]ultiple-lawyer conferences not involving opposing counsel . . . involve
duplicate work," for which prevailing parties are not entitled to recover fees under section
541(b). *Id.* at 241-42. In subsequent cases, the district court has extended *Morcher* to disallow
intra-firm conferences between attorneys and legal staff, as such conferences similarly did not
involve opposing counsel. *See Bluebeard's Castle, Inc. v. Hodge*, 2009 WL 891896, at *13
(D.V.I. Apr. 1, 2009) (holding that a prevailing party may not be reimbursed for attorney's fees
"for conferences and communications between their own attorneys and legal staff"); *see also*
*Staples*, 2008 WL 450265, at *2 (disallowing as duplicative reimbursement for conferences and

---

[7] All of these intra-firm attorney conferences were billed by Attorney Catera at either .10 or .20
of an hour: (1) a November 17, 2011 "Conference with R. Hunter re: research subrogation
claim"; (2) a November 21, 2011 item for ""Discuss with R. Hunter further research to further
discovery"; (3) a July 6, 2012 item for "Discuss with R. Hunter drafting jury instruction re: pilot
response and contributory negligence"; (4) a July 12, 2012 item for "Telephone conf. with R.
Hunter re: pretrial brief issues including punitive damages and lost income, discuss motion in
limine re: prematurity of diminish value claim"; (5) a July 30, 2012 item for "Discuss with R.
Hunter reply to Opp[osition] to Motion in Limine"; (6) a July 31, 2012 item for "Telephone conf.
with R. Hunter [re:] trial brief and theory of adverse inference and scheduling of trial and pretrial
matters"; (7) an August 3, 2012 item for "Telephone conf. with R. Hunter [re:] Jury instructions
and 5 VIC 1451 re: contributory negligence and apportionment liability"; (8) an August 7, 2012
item for "Telephone conf. with R. Hunter re: court calendar"; (9) an August 9, 2012 entry for
"Telephone conf. with R. Hunter re: pretrial conference"; (10) an August 10, 2012 entry for
"Telephone conf. with R. Hunter re: deadlines confirmation; exhibits; witness H. Clarke – use of
depo"; (11) an August 11, 2012 item for "Telephone conf. with R. Hunter re: revisions to UPS
reply to Plaintiff motion in compliance and explicatory memo"; (12) an August 12, 2012 item for
"Discuss with R. Hunter filing motion to strike Plaintiff unauthorized responses (not in
compliance with court order)"; and (13) an August 23, 2012 item for "Discuss with R. Hunter
motion for costs/fees and draft motion for atty fees."

communications between defendant's own attorneys and legal staff); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *2 (D.V.I. Dec. 20, 2007) (disallowing reimbursement for conferences between party's "own attorneys and paralegals"). By contrast, UPS directs the Court to *Jo-Ann's Launder Center, Inc.*, 1995 WL 78299, at *5, which provides that "[t]ime expended conferring with co-counsel or the client is recoverable as long as reasonably expended."

The Court notes that the billing records here reflect short conferences between an associate discussing legal issues with a senior partner in which only the associate billed the time. Further, the billing is neither excessive nor duplicative, but was reasonably expended to advance the litigation. The Court therefore concludes that these attorney's fees are reimbursable. *See id.*

Plaintiffs also challenge billing entries by UPS's counsel for work by Attorney Elise Catera at trial. They allege that such work was unnecessary "given . . . the participation for the most part of lead counsel, attorney Hunter, with brief participation by Attorney Catera." (Dkt. No. 192 at 14). UPS counters that Attorney Catera performed extensive research and writing in response to Court-ordered briefing during trial and also presented oral argument at trial concerning the inapplicability of FAA regulations cited by Plaintiffs—which yielded a favorable result for UPS. The Court finds that the billing entries for Attorney Catera at trial were reasonably expended and will be compensated.

Also in the realm of alleged excessiveness, Plaintiffs assert that attorney's fees for mediation are not reimbursable. While the Court has previously found that mediation *costs* are not compensable under § 541(a), Plaintiffs cite no rule—and the Court is unaware of any—that the time spent by attorneys preparing for and participating in mediation should not be compensated under § 541(b). Mediation is a key aspect of litigation, and a party's attorney who is familiar with the case and prepared for mediation would be in the best position to assess the

strength of the case, represent that party in mediation, and determine whether settlement is in the best interests of the client. The Court rejects Plaintiff's argument that such fees should not be compensated.

Plaintiffs further claim that numerous tasks could have been undertaken by a legal secretary or paralegal and did not have to be performed—and billed—by Attorney Hunter at the rate of $295.00 per hour. They cite, for example, two entries for "Preparation of Notice of Service" on January 20 and 24, 2011 at three-tenths and two-tenths of an hour, respectively; a March 1, 2011 entry for "Obtain[ing] aerial views of Alexander Hamilton Airport from Google map" at five-tenths of an hour; May 3, 2011 entries for "Preparation of subpoena duces tecum to US Postal Service" for one and eight-tenths of an hour and "Preparation of Notice of Subpoena Duces Tecum" for three-tenths of an hour; a July 26, 2011 entry for "Review of proposed Joint Motion to Extend Deadline" for three-tenths of an hour; a November 1, 2011 entry for "Preparation of four notices of deposition" at five-tenths of an hour; and a June 25, 2012 entry for "Annotate Winston Smith deposition" for one hour.

In its Reply, UPS addresses only Plaintiffs' assertion that annotating deposition transcripts could have been performed by a paralegal. In that regard, UPS asserts that "[i]t is hard to fathom how a paralegal could be charged with identifying key witness testimony that would support the defense's legal theories" in preparation for examination of witnesses at trial. (Dkt. No. 197 at 11). The Court agrees that this annotation task can appropriately be performed by an attorney. The Court also finds that preparation of a subpoena duces tecum—although not notices of such—is a task that can appropriately be performed by attorneys, and will allow compensation for this May 3, 2011 billing entry at the attorney rate.

18

On the other hand, the Court agrees with Plaintiffs that certain of the tasks performed by Attorney Hunter could have been performed by a paralegal, and therefore billing such tasks at the attorney rate will not be allowed. For example, obtaining a Google map depiction of the local airport does not require an attorney's expertise, and UPS did not argue to the contrary in its Reply. Similarly, preparation of deposition notices, notices of service, or a one-sentence notice of intent to serve a subpoena duces tecum, are not tasks that require attorney time. Plaintiffs have specifically objected to fourteen such items, totaling 4.50 hours and $1,327.50 in fees, that it concludes are excessive and unreasonable at Attorney Hunter's $295.00 per hour attorney billing rate. The Court agrees and will not allow the billing of these items at the attorney rate.[8] Instead, the Court will permit reimbursement for the 4.50 hours at the paralegal rate of $55.00 per hour, or $247.50.

Plaintiffs' final argument concerning excessiveness in billing is that a December 7, 2010 billing entry in this case for "Review of UPS motion to dismiss responsive filings in P.R. case,"

---

[8] The disallowed entries consist of: (1) a March 1, 2011 item for "Obtain aerial views of Alexander Hamilton Airport from Google map" for .50 of an hour at $147.50; (2) a March 21, 2011 item for "Preparation of Notice of Service" for .30 of an hour at $88.50; (3) a May 3, 2011 item for "Preparation of Notice of Subpoena Duces Tecum" at .30 of an hour for $88.50; (4) a May 18, 2011 item for "Preparation of Notice of Subpoena Duces Tecum" at .30 of an hour for $88.50; (5) a July 25, 2011 item for "Preparation of Notice of Service" at .20 of an hour for $59.00; (6) a September 13, 2011 item for "Preparation of Notice of Service" at .20 of an hour for $59.00; (7) a November 1, 2011 item for "Preparation of four notices of deposition" at .50 of an hour at $147.50; (8) a November 4, 2011 item for "Preparation of deposition notices N. Tirado and M. Holder" at .30 of an hour for $88.50; (9) a November 9, 2011 item for "Preparation of Deposition Notices and Subpoenas" for .60 of an hour at $177.00; (10) a November 16, 2011 item for "Preparation of deposition Notice of Kevin Twiss" at .30 of an hour for $88.50; (11) a November 16, 2011 item for "Preparation of Amended Notice of Deposition K. Twiss" at .20 of an hour for $59.00; (12) a December 29, 2011 item for "Preparation of Deposition Notice Maldonado" for .20 of an hour for $59.00; (13) a December 29, 2011 item for "Preparation of deposition Notice M&N" at .30 of an hour for $88.50; and (14) an August 12, 2012 item for "Preparation of notice(s) of depos[itions]" at .30 of an hour for $88.50.

totaling $147.50, did not benefit UPS's litigation. (Dkt. No. 192 at 7). Similarly, Plaintiffs challenge a December 8, 2010 billing entry for "Revision to Answer of UPS to Complaint filed in P.R.," totaling $501.50, as a charge UPS had incurred "when its attorneys drafted said answer in Puerto Rico." *Id.* These objections challenge entries for work by UPS's St. Croix counsel based on reviewing and revising work submitted in other cases—*Lawrence Lee v. UPS* and an "M&N Aviation Complaint"—filed in Puerto Rico. In its Reply, UPS does not explain how the charges related to the revision of the Answer were "reasonably expended" to advance *this* litigation, and not excessive, *Gulfstream III Assocs., Inc.*, 995 F.2d at 420, or how these two cases may have been "useful and of a type ordinarily necessary to secure the final result obtained from the [instant] litigation." *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 561 (1986) (internal quotation marks omitted); *see also Bluebeard's Castle, Inc.*, 2009 WL 891896, at *13 (D.V.I. Apr 1, 2009) (disallowing reimbursement for items that appeared to be "unrelated to this litigation" as unreasonable and therefore not compensable). Accordingly, the Court will disallow reimbursement for the December 7 and 8, 2010 entries, totaling $649.00.[9]

### 3.  Billing for Work That Allegedly Did Not Benefit UPS's Litigation

Plaintiffs' last general category of objections to UPS's Motion for Attorney's Fees concerns billing for work expended on motions that allegedly did not benefit Defendant's litigation because the work was not utilized by UPS or otherwise was "not applicable." Included in this group are items such as: legal research on a subrogation claim that allegedly did not move

---

[9] These were the only two attorney's fees billing entries related to litigation of the Puerto Rico cases to which Plaintiffs objected.

forward; depositions of USPS employees; and legal research on the doctrine of adverse inference. (Dkt. No. 192 at 11-13).

Plaintiffs provide no support or explanation for their argument that the only compensable attorney's fees are those related to evidence utilized at trial. Section 541(b) does not require such a showing. It simply provides that the prevailing party will be awarded attorney's fees in such sums as the Court in its discretion "may fix by way of indemnity" as compensation for the prevailing party's attorneys in maintaining or defending the action. 5 V.I.C. § 541(b). This language encompasses the time counsel expended in researching possible defense claims, taking depositions, and engaging in other legal work that UPS reasonably anticipated would be useful in maintaining its defense. The key inquiry in assessing whether legal work warrants reimbursement is not whether the related evidence was ultimately utilized at trial. Rather, the analysis concerns whether the work was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Devcon Int'l*, 2008 WL 219968, at *2 (internal quotation marks omitted).

In *Grand Union*, the losing plaintiff argued that defendant should not be awarded fees for work on unsuccessful motions. The court characterized such an argument as a "misinterpretation of the relevant case law, which permits reduction of fees when a party succeeded on some *claims or defenses but not others*." *Grand Union*, 2013 WL 163830, at *2 n.1 (emphasis added) (citing *Galt Capital, LLP*, 2007 WL 4800135, at *3 (noting "where the prevailing party achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained.") (quotation omitted)). In this case, similar to the result in *Grand Union*, UPS "achieved total success through a judgment in its favor on all claims." *Id.* The legal work that contributed to this complete victory was not frivolous, nor did it generate undue fees. The

Court rejects Plaintiffs' argument and will not reduce any of UPS's attorney's fees on this ground.

### 4.  Summary

The Court has disallowed $1,899.50 in requested attorney's fees. After subtracting that sum from the $123,356.50 in attorney's fees sought, UPS will be awarded a total sum of $121,457.00 in attorney's fees.[10]

### 5.  Request for an Evidentiary Hearing

Plaintiffs conclude that if the Court is inclined to award fees, they "request an evidentiary hearing on the amount to be awarded due to its lack of reasonableness and necessity." (Dkt. No. 192 at 19) (citing *Planned Parenthood of Cent. N.J. v. Att'y Gen. of the State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002)).

In *Planned Parenthood*, the Third Circuit held—in a case where plaintiffs moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988—that an evidentiary hearing must be held to determine the reasonable market rates when the hourly rate charged by the attorney was disputed. *Id.* at 266. That is not the case here, as Plaintiffs do not dispute the hourly rates charged by any of UPS's attorneys, but rather the hours worked. Because the Court does not deem an evidentiary hearing necessary to resolve the issues presented here, the Court denies Plaintiffs' request for an evidentiary hearing.

---

[10]  The Court notes that on November 7, 2013, UPS filed a "Notice of Partial Settlement" of its attorney's fees claim. (Dkt. No. 206). The award of attorney's fees granted here does not take into account the Partial Settlement.

**CONCLUSION**

For the reasons cited above, the Court will grant in part and deny in part Defendant UPS's Motion for Attorney's Fees. (Dkt. No. 178). The Court will award $6,586.35 in costs and $121,457.00 in attorney's fees. An appropriate Order accompanies this Memorandum Opinion.

Date:   March 21, 2014

_____/s/_____
WILMA A. LEWIS
Chief Judge